[No. B014977. Second Dist., Div. Three. Aug. 4, 1986.]

PHILIP KROOPF, Plaintiff and Appellant, v.
ALFRED M. GUFFEY, Defendant and Respondent.

**COUNSEL**

Philip Kroopf, in pro. per., and William J. Glucksman for Plaintiff and Appellant.

Lebovits & David and Moses Lebovits for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Philip Kroopf (Kroopf) appeals from an order granting the motion to quash service for lack of personal jurisdiction of defendant and respondent Alfred Guffey (Guffey).

Because there was no substantial evidence to support the trial court's ruling, the order is reversed.

### PROCEDURAL AND FACTUAL BACKGROUND

This action concerns whether a Connecticut resident who formerly lived in California and allegedly committed some offending acts during his stay, is subject to jurisdiction under California's "long arm" statute.

In February 11, 1984, Kroopf filed a complaint against Connecticut resident Guffey alleging, inter alia, causes of action for breach of express contract based on an oral agreement, breach of implied contract, declaratory relief, intentional and negligent misrepresentation based on the contract, and intentional and negligent infliction of emotional distress.

The complaint alleged the two men entered in an oral agreement in California in 1976 that during the time they lived together they would combine their skills, efforts, labor and earnings and share any property thereby acquired. Kroopf gave up his job to become Guffey's confidante, companion, and business and personal advisor. The contract was alleged to

have been performed from late 1976 to March 1982, at which time Guffey, who was then residing in Connecticut, refused to convey to Kroopf his share of the acquired property.

In March 1985 Guffey made a special appearance to quash service for lack of personal jurisdiction.[1] In his affidavit, Guffey stated he had lived in California from 1977 to 1979 only, and since then had lived in Connecticut. He admitted meeting Kroopf in New York but denied entering into a contract with him in California or any other state. Guffey further denied having conducted any business, or having any business contacts, in California.

Kroopf filed opposition to the motion to quash, together with his affidavit. He averred he met Guffey in New York in 1971, and in 1975 Guffey moved to California, renting a townhouse at 360 South Roxbury Drive, Beverly Hills. In 1976, Guffey asked Kroopf to live with him in California and enter into the theatrical business. In the summer of 1976, Kroopf moved to California and entered into an oral agreement with Guffey. The California part of the contract was "performed" while Kroopf and Guffey lived in the Beverly Hills townhouse through 1980.

Kroopf's affidavit further states that after leaving Beverly Hills in December 1980, Guffey and Kroopf moved to a house in Connecticut. But in 1981 and the beginning of 1982, Kroopf spent most of his time in Los Angeles because of his mother's illness and his brother's death. In March 1982, Guffey telephoned Kroopf informing him he was not entitled to his share of the earnings and property and that he should remain in California. In June 1983, Kroopf contacted Guffey in Connecticut requesting the return of his late brother's ashes. Guffey refused, causing Kroopf to suffer mental and physical distress.

Lastly, Kroopf declared he was familiar with Guffey's signature and handwriting because he handled most of Guffey's banking. Kroopf attached copies of receipts from purchases, rent, bank statements, and IRS documents from December 1975 to the fall of 1980, showing Guffey's address in Beverly Hills.

On April 20, 1985, based on the two affidavits, the trial court granted Guffey's motion to quash without comment. Kroopf filed the instant appeal.[2]

---

[1]Code of Civil Procedure section 418.10, subdivision (a)(1) states: "(a) A defendant, on or before the last day of his time to plead or within such further time as the court may for good cause allow, may serve and file a notice of motion either or both: [¶] (1) To quash service of summons on the ground of lack of jurisdiction of the court over him."

[2]Code of Civil Procedure section 904.1 states in pertinent part: "An appeal may be taken from a superior court in the following cases: [¶] . . . . [¶] (c) From an order granting a motion to quash service of summons . . . ."

## CONTENTION

Kroopf contends the trial court erred in granting Guffey's motion to quash based on lack of personal jurisdiction.

## DISCUSSION

### 1. *Scope of review.*

■ "The applicable standard of review [of a motion to quash] was set forth in *Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 994-995 [107 Cal.Rptr. 744], wherein it is stated: 'We test [the] record in light of the principles that: (1) where a defendant properly moves to quash out of state service of process for lack of jurisdiction, the burden of proof is upon the plaintiff to establish the facts of jurisdiction by a preponderance of the evidence (*Wilson* v. *Eddy* [(1969)] 2 Cal.App.3d 613, 617 [82 Cal.Rptr. 826]; *Martin Bros. Elec. Co.* v. *Superior Court* [(1953)] 121 Cal.App.2d 790, 794 [264 P.2d 183]; *Briggs* v. *Superior Court* [(1947)] 81 Cal.App.2d 240, 251 [183 P.2d 758]); (2) evidence of those facts or their absence may be in the form of declarations . . . (*Atkins, Kroll & Co.* v. *Broadway Lbr. Co.* [(1963)] 222 Cal.App.2d 646, 654 [35 Cal.Rptr. 385, 12 A.L.R.3d 880]); [fn. omitted] (3) where there is a conflict in the declarations, resolution of the conflict by the trial court will not be disturbed on appeal if the determination of that court is supported by substantial evidence (*Vibration Isolation Products, Inc.* v. *American Nat. Rubber Co.* [(1972)] 23 Cal.App.3d 480, 482 [100 Cal.Rptr. 269]; *Atkins, Kroll & Co.* v. *Broadway Lbr. Co., supra,* 222 Cal.App.2d 646, 654); . . .'" (*Evangelize China Fellowship, Inc.* v. *Evangelize China Fellowship* (1983) 146 Cal.App.3d 440, 444 [194 Cal.Rptr. 240].) ■ "'Substantial evidence'" is not "'"'deemed synonymous with 'any' evidence[,]'"'" but rather "'of ponderable legal significance, . . . reasonable in nature, credible, and of solid value.'" (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873 [197 Cal.Rptr. 925], original italics deleted.)

### 2. *Guffey has sufficient contacts with California to satisfy personal jurisdiction.*

#### a. *General rules for in personam jurisdiction.*

California's "long arm" statute provides "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.)

██ In a line of cases beginning with *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], the United States Supreme Court has defined the parameters of the states' power to compel nonresidents to defend suits brought in state courts. Generally, the forum state may exercise jurisdiction over a nonresident defendant where the defendant has had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*Id.*, at p. 316 [90 L.Ed. at p. 102].)

The critical inquiry concerns the character of the defendant's activities within the forum state, whether the cause of action arises out of, or has substantial connection with, that activity, and upon balancing the convenience of the parties and interests of the state in assuming jurisdiction. (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 148 [127 Cal.Rptr. 352, 545 P.2d 264], citing *Hanson* v. *Denckla* (1958) 357 U.S. 235, 250-253 [2 L.Ed.2d 1283, 1295-1298, 78 S.Ct. 1228]; *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199]; *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57].)

b. *This is not a domestic relations case.*

Guffey argues this court may receive guidance as to jurisdiction over him by likening this case to spousal and/or child support cases. In addition, he claims Kroopf cannot invoke the doctrine that jurisdiction attaches to one who causes an effect in the state because "[t]he *Kulko* [v. *Superior Court* (1978) 436 U.S. 84 [56 L.Ed.2d 132, 98 S.Ct. 1690]] opinion points out that this [effect] principle, applied in cases involving torts and commercial activities is not applicable to personal domestic relations." (*Bartlett* v. *Superior Court* (1978) 86 Cal.App.3d 72, 76 [150 Cal.Rptr. 25].)

However, a perusal of the complaint indicates the controversy is not a domestic relations/family law case. ██ The provisions of the Family Law Act do not govern the distribution of property acquired during a non-marital relationship. (*Schafer* v. *Superior Court* (1986) 180 Cal.App.3d 305, 309 [225 Cal.Rptr. 513]; *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 665 [134 Cal.Rptr. 815, 557 P.2d 106]; see, e.g., *In re Marriage of Buford* (1984) 155 Cal.App.3d 74, 79 [202 Cal.Rptr. 20]; *In re Marriage of Johnson* (1983) 143 Cal.App.3d 57, 63 [191 Cal.Rptr. 545].) Property rights, if any, under a "*Marvin* agreement" derive from an express or implied contract

or equitable principles. (*Schafer* v. *Superior Court, supra,* at p. 309; *Marvin* v. *Marvin, supra,* at p. 682.)

The instant case was not filed as a domestic relations matter, but as a regular civil case. The complaint alleges breach of an express or implied contract and tort causes of action. Thus, none of the family law cases cited by Guffey with their more stringent jurisdiction standards is applicable.

c. *The trial court could exercise personal jurisdiction over Guffey based on the alleged contract or tort causes of action.*

█ It is well settled jurisdiction attaches when a cause of action arises out of the breach of a contract made and to be performed in the state. (*Henry R. Jahn & Son* v. *Superior Court* (1958) 49 Cal.2d 855, 860-861 [323 P.2d 437]; *Long* v. *Mishicot Modern Dairy, Inc.* (1967) 252 Cal.App.2d 425, 429 [60 Cal.Rptr. 432]; *Martin* v. *Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 475 [108 Cal.Rptr. 23].)

Admittedly, the former domicile of the defendant in the forum state would be insufficient by itself to confer jurisdiction if the domicile had no relation to the instant litigation. █ But domicile at the time the cause of action arose, in addition to allegations that the action is based on the defendant's activities within the forum state, afford the state a constitutional basis for personal jurisdiction. (*Owens* v. *Superior Court* (1959) 52 Cal.2d 822, 830 [345 P.2d 921, 78 A.L.R.2d 388].) Thus, a state may exercise jurisdiction over a defendant domiciled in the state at the time the cause of action arose, but who left the forum before commencement of the action or service of process. (*Id.,* at p. 829; see Com.-Judicial Council, 14 West's Ann. Code Civ. Proc. (1973 ed.) § 410.10, p. 464.)

█ █ █ A motion to quash service can be made and determined on hearsay affidavits. (*Fuller* v. *Lindenbaum* (1938) 29 Cal.App.2d 227, 230 [84 P.2d 155]; Code Civ. Proc., § 2009.)[3] In the instant case, when Guffey moved to quash service, he filed a supporting affidavit. In it, he

---

[3]Whereas Code of Civil Procedure section 2009 provides an affidavit may be used to verify a pleading or a paper, and to prove the service of a summons, inter alia, "and in any other case expressly permitted by statute[,]" it does not specifically set forth among its uses the support of a motion to quash service. Nor does the statute which allows a motion to quash service (Code Civ. Proc., § 418.10), "expressly permit" such use of an affidavit. Nonetheless, case law does support such use. (*International Aerial Tramway Corp.* v. *Konrad Doppelmayr & Sohn* (1969) 70 Cal.2d 400, 406 [74 Cal.Rptr. 908, 450 P.2d 284]; *Fuller* v. *Lindenbaum, supra,* at p. 230.)

states he met Kroopf in New York, but denies he ever entered into any contract anywhere with Kroopf, and adds "nor have I done anything else as reflected in this complaint in the State of California, having spent all of my time with Mr. Kroopf, except for the years of 1977 through 1979, in the State of New York or the State of Connecticut." He thereby admits he lived in California, but *only* from 1977 to 1979.

Kroopf likewise filed an affidavit in opposition to Guffey's motion to quash with 15 attachments, the contents of which differed from Guffey's in certain important particulars. Most significantly, they place Guffey in California up through the end of 1980.

■ This being the state of the record, we are aware of the rule on review that whenever conflicting evidence is presented in affidavits on a motion to quash, it is presumed the trial court resolved such conflicts against the appellant and in support of its order. (*Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc.* (1969) 276 Cal.App.2d 610, 615 [81 Cal.Rptr. 320]; 5 Cal.Jur.3d, Appellate Review, § 533, pp. 227-229.)

It is to be noted "the rule is sometimes stated that an '. . . appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 249; quoted in *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) Such statements, taken out of context, can be misleading, because they do not say how to determine whether the supporting evidence is substantial. [¶] 'Occasionally an appellate court affirms the trier of facts on isolated evidence torn from the context of the whole record. . . . Had the appellate court examined the whole record, it might have found that a reasonable trier of fact could not have made the finding in issue.' (Traynor, The Riddle of Harmless Error (1969) p. 27.) 'Not every surface conflict of evidence remains substantial in the light of other facts.' (*People* v. *Holt* (1944) 25 Cal.2d 59, 70 [153 P.2d 21], and see example at p. 70.) [¶] In practice, substantial evidence reviews have necessarily been based on the whole record. To base a determination solely on the supporting evidence in isolation would lead to a stultified review for substantial evidence, if not an actual 'any evidence' rule. But notwithstanding divergent descriptions of the process in appellate opinions, California has not used an 'any evidence' standard for appellate review of sufficiency of the evidence." (*Rivard* v. *Board of Pension Commissioners* (1985) 164 Cal.App.3d 405, 410-411 [210 Cal.Rptr. 509].)

Examining the *whole record,* we also review the 15 attachments to Kroopf's affidavit in opposition, which apparently were received by the trial

court without a hearsay objection; thus, they were before the trial court for its consideration and are in the record before us. (*Nalley's Inc.* v. *Corona Processed Foods, Inc.* (1966) 240 Cal.App.2d 948, 951 [50 Cal.Rptr. 173]; 2 Cal.Jur.3d, Affidavits, § 30, p. 810.) The contents thereof put in issue Guffey's credibility. Kroopf avers he can recognize Guffey's handwriting, and submits documents purportedly signed by Guffey, which would place him in California at the Beverly Hills address in 1980, was sworn to by Kroopf in his affidavit. Guffey made no effort to controvert this damaging evidence.

■ Based on this record, the trial court should not have granted Guffey's motion because his evidence in support thereof is not credible and therefore is not substantial.

3. *Merits of complaint not in issue.*

Using the motion to quash service of summons as a vehicle, Guffey attempted to place issues before the trial court which were irrelevant to a consideration of the motion. His attempts to invoke domestic relations principles merely muddied the waters in a ruling on the motion. Guffey's mere denial of entering into a contract or the commission of the torts alleged in Kroopf's complaint cannot form the basis for granting his motion.

Before this court, Guffey argues "[t]he complaint herein alleges the creation of an oral contract that smacks of a marital agreement between two men, . . ." Our review is not influenced by this not-too-subtle effort to throw this court off the track. Further in that regard, Guffey argues some of the complaint's causes of action are violative of public policy as sanctioning the marriage of two men.

■ While it is true the courts will not enforce a contract that rests wholly on illicit meretricious consideration (*Taylor* v. *Fields* (1986) 178 Cal.App.3d 653, 664 [224 Cal.Rptr. 186]; *Jones* v. *Daly* (1981) 122 Cal.App.3d 500, 506-507 [176 Cal.Rptr. 130]; *Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 672), a motion to quash service is strictly limited to the question of jurisdiction over the defendant. (*Nelson* v. *Horvath* (1970) 4 Cal.App.3d 1, 4 [84 Cal.Rptr. 101]; 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 163, p. 548.) "Determination of the *merits* of the complaint [is] not within the scope of the issues raised by the motion. [Fn. omitted.]" (*Nelson* v. *Horvath, supra,* at pp. 4-5, italics added.) Thus a motion to quash does not serve the function of a demurrer as to whether the complaint states a cause of action.

■ The trial court erred in granting Guffey's motion to quash as there was no substantial evidence to support it.

## DISPOSITION

The order granting motion to quash service is reversed. Guffey to bear costs on appeal.

Lui, J., and O'Rourke, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.